Okay, we'll turn to 21-8018, United States v. Blattel. Ms. Shen, you may proceed. Good morning, Your Honors, and may it please the Court. My name is Kathleen Shen, and I represent the appellate, Mr. William Blattel. When the District Court sentenced Mr. Blattel to 110 months' imprisonment, with 84 months to run consecutive to any State sentence, it believed that it was imposing a sentence within the advisory guideline range. But in fact, that was a substantial upward variance. This was plain procedural error, and resentencing is warranted. The sentencing record makes clear that the District Court intended to impose a within-guideline sentence. That's how this sentence is described in the Statement of Reasons, within the guideline range. And there is also nothing in the sentencing record to indicate that the District Court intended to impose an upward variance. But in fact, 110 months, with 84 months consecutive to any State sentence, was a substantial upward variance, which could result in Mr. Blattel spending an additional 84 months, or seven years, in prison. And if anybody had realized that 5G1.3c applied at sentencing, they would have said so. The parties in the Court all recognized that the Federal sentence should take into account the possibility that Mr. Blattel would receive substantial State sentences. Despite this, nobody once mentioned 5G1.3c. It was not mentioned in the PSR, it was not mentioned by either of the parties, and it was not mentioned by the judge when he calculated the guideline range. Counsel, could I ask you, are you giving up on count one of your, since Jones came out? We recognize that it is foreclosed by Jones, but would preserve it for further review. Okay. And then, in regards to your argument, looking over what the trial court did, I'm like, I could not find anywhere, anywhere where he referred to that, the sentencing guideline that you're referring to. But what was bothering me is that when you read the district court's detailed comments all the way through it, it appears to me that it's obvious he was concerned about double counting, and actually the requirements addressed in that sentencing guideline. So I need you to kind of dissuade me of that thinking, please. Yes, Your Honor. So, you know, it's clear that the anticipated State sentences were on everyone's mind, and so I think that the fact that no one talked about the sentence shows, or about the guideline, shows that they didn't know it existed. Now, I think what you're concerned about is, well, isn't what the district court did sort of reasonable? And I think the answer to that is it might have been reasonable in the abstract. If there were no guideline, if he was operating on a blank slate, the district court's way of dealing with the anticipated State sentence isn't necessarily unreasonable. Is it your argument, then, that in every type of sentencing, you've got to refer to specifically the sentencing guideline provision? Not just refer to them, but you have to accurately calculate what the guidelines are. And this Court has held that when you calculate the guidelines, part of that is whether the sentence is to be imposed concurrently or consecutively with another State sentence. That's what this Court held in Kiefer and Smith, and that's also what the plain text of the guidelines say. Now, the introductory commentary to Chapter 5 says a sentence is within the guidelines if it complies with each applicable section of this chapter. So I think given Smith and Kiefer and Lyman and all of the cases where this Court has said you don't calculate the guidelines correctly unless you know whether it says it should be concurrent or consecutive, and the fact that the guidelines themselves say that part of the guidelines is this concurrent, consecutive question, at a minimum, the district court has to recognize what the guidelines call for. And here, it's plain that the guidelines called for a concurrent sentence. So even if the Court's comments equate to what the guideline requires you to do, the fact that you don't name the specific guidelines section would be error? I would disagree with Your Honor that the district court's comments equated to what the guidelines would do. Well, no, but I'm just, as an example, I'm saying is that your point, that if the judge, in making the sentence and the comment, does not refer specifically that I'm applying this guideline, but goes through basically the elements of that guideline, that that still would constitute error? Because he didn't mention the guideline? The district court would have to at least recognize that the guidelines call for consecutive or concurrent sentences. And I think what you're describing is pretty similar to what happened in this Court's decision in Lyman, where the district court didn't specifically refer to 5G 1.2, but clearly understood that the guidelines called for a concurrent sentence. And that's really different from what happened here, because nobody recognized that the guidelines called for Mr. Bluchel's federal sentence to be concurrent to any anticipated state sentence. So the starting point of the entire sentence was wrong. I thought the starting point was to recognize here that the trial court knew that there was the concurrence as far as the state versus the federal account in regards to this. I'm sorry, Your Honor, I don't think I understood the question. Well, I don't think I did a very good job of asking the question either. So go ahead. I don't want to interfere with your presentation. Simply, the guideline range here was 110 to 120 months federal sentence to be imposed concurrently with any state sentence. That had to be the starting point for any 3553 analysis, and it simply wasn't the case. And I think it's clear here that nobody knew the guideline existed, because if they did, it would have come up. Everybody was sort of talking about, how do we deal with these anticipated state sentences? And there was a recognition that this could impact what the federal sentence should be. But if they had known that the Sentencing Commission has, in fact, provided an answer to this precise question, and they've thought about it over the years and they have concluded that the starting point for federal sentencing is a fully concurrent federal sentence with any state sentence that is anticipated to result from relevant conduct, they would have said so. That would have been a much better argument than to say, to talk about this impurely equitable outside the guidelines terms. And, you know, I would just point this court. These were the two cases that were highlighted in the 28-J letter, but I think they're directly on point. Both in Kiefer and Smith, this court found reversible procedural error where the district court did not apply the 5G 1.3 guideline that called for a concurrent sentence. And, you know, this court emphasized, if you impose a consecutive sentence when the guidelines call for a concurrent sentence, that's a variance, and you have to justify that just as you would justify any other variance. And here it's clear the district court didn't intend to impose an upward variance. There's nothing in the record that says that. And, in fact, what he did say sort of suggests that he was trying not to pile on. The statement of records also makes that clear. The entire variance section is left blank. And I think this case is really just like Kiefer and Smith. The district court failed to apply 5G 1.3C and, therefore, failed to recognize that the guidelines called for a federal sentence that was concurrent with the anticipated state sentence. And, as a result, it imposed a substantial upward variance when it ordered 84 months of Mr. Blattel's sentence to run consecutively. And it did so without realizing it. That's textbook procedural error. That procedural error was plain because it's clear and obvious from the record that 5G 1.3C should have been applied, but that it was not applied. And it's also clear and obvious from both the text of the guideline and this court's precedence that failure to apply or failure to take into account a guideline recommending a concurrent sentence when calculating the advisory guidelines range is procedural error. Do you have anything to present to us with regard to prejudice? Has he been sentenced to anything in state court? If we send it back down on this basis, will it be a useless gesture because he's not being sentenced on any statement? I don't believe it will be a useless gesture. We don't know for certain what's going to happen. What's the status? So he was in primary state or Wyoming custody. I believe he was sentenced in Wyoming to 10 to 14 years. So he was. Yes. That's happened. That's happened. So this is going to make, at least with respect to the Wyoming sentence, up to 7 years difference for him. The Utah case hasn't proceeded, so there is some uncertainty there. But our view is that it's sufficient to show prejudice. And again, in the ordinary case, a guideline error of this type would be sufficient to show prejudice. And we think this is an ordinary case, or even better than an ordinary case, because the record is so clear that the district court was really relying on the guidelines and using that as a starting point and his benchmark when he calculated the sentence. And so for all of those reasons, we would ask this court to find that the partially consecutive sentence was based on the district court's plain procedural error, that the mistake affected his sentence, and we would ask for his sentence to be vacated and for this court to remand for further proceedings. Thank you. Were you trial court? Did you represent them at the trial level in this matter? I did not personally. My office did. OK. But nobody even bothered to think to tell the district court that you ought to be looking at this particular guideline? You know, I think the record gives sort of hints as to how this could have happened. I mean, first, you know, the guidelines are complicated. And second, there actually is a discussion where defense counsel talks about how unusual it is to be in a situation that there's these pending state counts that they haven't been able to resolve through a global resolution and that they haven't dismissed in light of the federal prosecution. And this is a relatively new guideline. It was passed in 2014 after Setzer, so the Supreme Court didn't even recognize or it wasn't clear that you could sentence. Well, the answer obviously is that none of the counsel thought to even mention to the judge, you need to be looking at this guideline. You know, my view of the record is nobody knew this guideline existed, that this was an unfamiliar situation and they just, everybody made a mistake. And that's what a plain error is when you make an obvious mistake. So. All right. Thank you. Thank you. Mr. Forwood. Thank you, Your Honor. May it please the Court. Were you trial counsel in this matter? I was going to start off and say I was the counsel there at the sentencing hearing, Your Honor. So I have to fall on the sword for that particular portion of this. Well, you're not falling on the sword all the way, are you? Just a little bit. No, the initial trial counsel on it became a judge, and so he gave this to me, so. Ladies and gentlemen, my name is T.J. Forwood. I'm an assistant U.S. attorney with the District of Wyoming. I'm presenting this case on behalf of the United States. Beginning, I think, the very start of this is, as something that was referenced by Ms. Shen, is what is the starting point? And I think one thing that is clear is that a lot of the parties agree on things that happened. But one thing we do disagree on is where the starting point is. And where I'll start is the initial calculation. The district court looked at all the particulars of the offense. It looked at all the particular enhancements. And there were three enhancements that were provided. The one of note I will say now is that it was the four-point enhancement for being related to another felony offense. That comes into play when the final sentencing comes in. So that is the starting point. That initial calculation is correct. Now, looking then to the supplemental authority provided by Ms. Shen, I took a look at that a little bit. There's a couple of differences between both of those. First is in the Kiefer case, that is one in which the guideline calculation just went completely off the rails. There were multiple offenses from different places. The judge was including conduct that may or may not have been criminal history. That initial calculation was completely messed up from the beginning and then made everything else more difficult from there. Mr. Henry. Did you take the guide? Because it's obvious when you read this, the district court did not even glance at this particular guideline. I mean, it's not mentioned anywhere. So what I need for you to do to convince me that I shouldn't agree with your opposing counsel is to take the guideline statute and apply it with what the district court actually said. Because if he, in his actual statements, didn't comply with the guideline, you're going to lose. Fair, Your Honor. And what I will say then for that is, beginning with 5G 1.3, first I'll start off with it is recognized that the judge is presumed to know the law. And one thing I think... This seems very simple. Did the judge apply the guideline? No. Right. If there's a miscalculation of the guideline, we send it back. In the upward variance portion, Your Honor, when I was talking with Mrs. Brecker when she was drafting this, she did not see the upward variance portion. As I read, I can't recall the name of the case. Why not? It's clear in there that it is an upward variance if you make it consecutive. So I would agree with Your Honor on that. So why are you not completely falling on the sword? Pardon? So here's where I think a lot of that comes into issue. And I think it's starting with that 5G 1.3, and it's the background section, in which it states that the federal courts have discretion to select whether sentences they impose will run concurrently or consecutively with respect to sentences that they imposed or that have been imposed in other proceedings, including state proceedings. And that is citing from the CSER decision. And I think even if we can see that there was error and that it was plain, the very, very important part is that third prong, is that it has to affect the substantial rights. But for the error, this would be different. And that clearly cannot be shown, Your Honor. And that's where I'm starting with that very first starting point. I thought if there's a calculation error, we put a heavy burden on the prosecution to show that there wasn't any prejudice. We presume, and as counsel said, the judge appeared to want to impose a guideline sentence. Judges do that a lot, maybe most of the time. So maybe the judge is saying, look, without any guidance from the guidelines, this is how I would weigh the equities. But I would suspect it's pretty likely that if the judge knew what the guideline was, the judge would have followed the guideline. Don't we presume that at least? Don't you have a burden here showing that there was no prejudice? Your Honor, I don't. Go ahead. Okay. I apologize, Your Honor. There is a case that is cited stating that in which there is a calculation error that it is presumed to be unreasonable. I do not disagree. To be unreasonable or prejudicial? I believe prejudicial, Your Honor. Okay. I take a look at that. I apologize. But for this particular sentence, what we can see is that the judge, starting with what I said in the very beginning was the initial starting point for the court, is that it was using the guidelines, I think you could say, as a guidepost. And what it did is that, and even though it might not have referenced 5G 1.3, without a doubt the court did not reference that on the record. I did not defense. Nobody mentioned that whatsoever. But what the court did, the court acknowledged that it could run the sentences concurrently or consecutive. And it showed that it truly weighed those factors under 3553A. And I think where that really comes into account is that it was partially concurrent. And it was partially concurrent by more or less removing. What you're saying is something I agree with. The judge was very thoughtful here. But that ain't the issue. Yes, sir. No, and so the issue is, did he consider the guidelines? And the answer is he didn't, right? From the, I mean, what I can say, Your Honor, to best defend it on the side of the United States is that there is no explicit reference to the guidelines for that. He didn't comply with the guidelines and he didn't explain the variance. The counsel made a point that I hadn't noticed before. But even in the sentencing explanation, I can't remember what the name of the document is. It doesn't even acknowledge there was a variance from the guidelines. So there's no explanation for the variance. Isn't that pretty dispositive here? So, to be frank, Your Honor, that is one where we received the supplemental authority yesterday and the new record of supplemental record of repeal. As I looked at that yesterday and especially this morning with Ms. Shen, made that argument out loud. That's something that I'm not sure how I can state that he did take that into account. He did not say that there was an upward variance. When you take into account that Lyman says that it is an upward variance. I do not disagree with that, Your Honor. But what I'm trying to say is, what I'm really focusing on, Your Honor, is the third problem. Is that if it were to go back, is there a reasonable chance that this sentence would be different? And the stance of the United States is that it would not. That, to me, seems to be the only argument you've got because the facts against this individual are bad. They're horrible facts. Yes. But you've got to convince us that under the third prong, and I don't know that you've done it yet, that the district court sentence will be any different than what he's already done following the guideline. That's, you have to follow the guideline. And we don't have that here. So, how are you going to, and your argument is the third prong of plain error. That's it. Completely agree. That is our strongest argument. Almost your only argument. We have cases saying when the judge, maybe it hasn't been filed yet, but when the judge says, I'm not sure what the guideline is here, but it doesn't matter to me, I would give this sentence anyway. We reverse and say, find out what the guideline is, then do it. I mean, gosh, you've got a tough road ahead of you. I want to hear from you. You had a question. I want to hear what you have to say. She's already owed the role. You want to hear from me what? I thought you were going to ask a question, and I, okay, good. I didn't interrupt you there. And I think that other decision, Your Honor, might be referenced to another one of my cases. Okay. I keep in this situation. But I think that this third prong is, again, it's our strongest argument, and the point of that third prong is that there's a real probability that both of the guidelines there, the sentence would be different. But here, what Judge Johnson did is that he carefully took those factors into account. Whether or not he acknowledged that specific guideline, he acknowledged that he could run those sentences concurrently, consecutive, or partially concurrently. And what he did is, the part he wanted to make concurrent was taking in the conduct from the other states. Make that concurrent. And the conduct of the firearm, that was a separate matter in the federal court in the District of Wyoming, and that needed to be treated differently. That needed to be treated separately. If this goes back to the district court, Judge Johnson, I think it's clear from the record and clear from this that that is still his view, that this conduct is separate. This conduct deserves to be punished separately from the State of Wyoming and the State of Utah. Therefore, this sentence, there is, the third prong fails, because there is not a reasonable likelihood that that sentence would change if it gets remanded back to the district court. The court made its intent. Shouldn't we ask him? Pardon? Shouldn't we ask him? That is well within your discretion, Your Honor. But I think that the record shows what his intent is. The record shows as he walked through the analysis of what happened, and that his acknowledgement of the different type of sentences shows what his intent is. So, yes, the court may be permitted to do that, but I still believe that the record is clear from the district court that that is their intent, and that would still be the same sentence if this case were remanded. If there's nothing further, I'll take a seat. You notice that I don't help you fall on your sword as much as Judge Hart. It is what it is, Your Honor. Okay, good. Oh, she's got some time left. Are you going to try? Didn't we do it for you? You know, just want to echo a lot. My very first argument before the Tenth Circuit, it was long before you were born, I got up in similar circumstance, and the Chief Judge, the presiding judge says, are you just trying to dig yourself a hole or find some way to lose this case? You know, we just reiterate that the third prong is met. There's nothing to indicate the district court would have given a seven-year upward variance. And no matter how thoughtful his sentencing was, it failed to take into account the correct guideline range, and that was procedural error and needs correction from this court. Thank you. Thank you, counsel. Case is submitted. Counsel are excused.